## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARA NASISI, ROBIN CHERNOFF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| *Plaintiffs*, | |
| **v.** | **Civil Action No.** 1:19-cv-4132 (KPF) |
| COMPREHENSIVE HEALTH MANAGEMENT, INC., | |
| *Defendant*. | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR APPROVAL OF THE JOINT STIPULATION OF SETTLEMENT

| | |
|---|---|
| DOUGLAS M. WERMAN<br>MAUREEN A. SALAS<br>WERMAN SALAS P.C.<br>77 West Washington Street, Suite 1402<br>Chicago, Illinois 60602<br>Telephone: (312) 419-1008<br>dwerman@flsalaw.com<br>msalas@flsalaw.com | TRAVIS M. HEDGPETH<br>THE HEDGPETH LAW FIRM, PC<br>3050 Post Oak Blvd., Suite 510<br>Houston, Texas 77056<br>Telephone: (281) 572-0727<br>travis@hedgpethlaw.com |
| JACK SIEGEL<br>SIEGEL LAW GROUP PLLC<br>2820 McKinnon, Suite 5009<br>Dallas, Texas 75201<br>Telephone: (214) 790-4454<br>jack@siegellawgroup.biz | RAVI SATTIRAJU (N.Y. Bar No. 4053344)<br>THE SATTIRAJU LAW FIRM, P.C.<br>116 Village Blvd., Suite 200<br>Princeton, NJ 08540<br>Telephone: (609) 799-1266<br>rsattiraju@sattirajulawfirm.com |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS AND SUMMARY OF THE LITIGATION ....................1

      A.    Factual Allegations...............................................................1

      B.    Overview of Investigation, Litigation, and Settlement Negotiations................1

            1.    Plaintiffs' FLSA Claim was Conditionally Certified as a
                  Collective Action ...........................................................3

            2.    Summary of the Parties' Factual Investigation .....................4

            3.    History of Settlement Discussions ....................................5

III.  SUMMARY OF SETTLEMENT TERMS .................................................6

      A.    The Plaintiffs ........................................................................6

      B.    Gross Settlement Amount ......................................................6

      C.    Monetary Awards and Distribution of Settlement Checks...........7

      D.    Limited Release for FLSA Opt-in Plaintiffs............................7

      E.    Settlement Administration ......................................................8

      F.    Service Awards .....................................................................8

      G.    Attorneys' Fees and Litigation Expenses ...............................8

IV.   THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR
      AND REASONABLE ............................................................................9

      A.    Standards for Evaluating the Proposed Settlement......................9

      B.    The Proposed Settlement Meets the Wolinsky Factors .................9

            1.    The Plaintiffs' Range of Possible Recovery ......................10

            2.    The Settlement Allows the Parties to Avoid Significant
                  Expenses......................................................................13

            3.    Plaintiffs' Litigation Risk Warrants Approval of the
                  Settlement ...................................................................14

            4.    The Settlement is the Product of Arm's Length Bargaining
                  between Experienced Counsel Following a Mediation.........14

   **C.**  **The Settlement Does Not Raise Any Potential for Abuse** ...............................15

**V.**  **PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES ARE REASONABLE**.................................................................................15

**VI.**  **NAMED PLAINTIFFS ARE ENTITLED TO SERVICE AWARDS** ........................17

**VII.**  **CONCLUSION** .........................................................................................................18

139349275_2

# TABLE OF AUTHORITIES

## Cases

*Barsa v. Beacon Health Options, Inc.*
No. 19-CV-1646 (JPO)(BCM) (S.D.N.Y. September 28, 2020) .....................................11

*Blum v. Stenson*
465 U.S. 896 (1984) ......................................................................................................16

*Cheeks v. Freeport Pancake House, Inc.*
796 F.3d 199 (2d Cir. 2015).......................................................................................9, 15

*Clark v. Ecolab Inc.*
No. 04CIV.4488PAC, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) .............................17

*Does 1-2 v. Deja Vu Servs., Inc.*
925 F.3d 886 (6th Cir. 2019)........................................................................................10

*Felix v. Breakroom Burgers & Tacos*
No. 15-CV-3531, 2016 WL 3791149 (S.D.N.Y. Mar. 8, 2016) ....................................12

*Galindo v. E. Cty. Louth Inc.*
No. 16 CIV. 9149 (KPF), 2017 WL 5195237 (S.D.N.Y. Nov. 9, 2017)...........................9

*Gonzales v. Lovin Oven Catering of Suffolk, Inc.*
No. 14-CV-2824 SIL, 2015 WL 6550560 (E.D.N.Y. Oct. 28, 2015) ...............................9

*Isett v. Aetna Life Ins. Co.*
No. 18-3271-CV, 2020 WL 201682 (2nd Cir. Jan. 14, 2020) ..................................10, 11

*Lizondro-Garcia v. Kefi LLC*
300 F.R.D. 169 (S.D.N.Y. 2014)....................................................................................9

*Mobley v. Five Gems Mgmt. Corp.*
No. 17 CIV. 9448 (KPF), 2018 WL 1684343 (S.D.N.Y. Apr. 6, 2018) ...................15, 16

*Monroe v. FTS USA, LLC*
860 F.3d 389 (6th Cir. 2017).........................................................................................12

*Oleniak v. Time Warner Cable Inc.*
No. 12-CV-3971 (KPF), 2013 WL 12447094 (S.D.N.Y. Dec. 17, 2013) .......................17

*Raniere v. Citigroup Inc.*
310 F.R.D. 211 (S.D.N.Y. 2015)....................................................................................10

iii

*Reyes v. Buddha-Bar NYC*
No. 08 CIV. 02494(DF), 2009 WL 5841177 (S.D.N.Y. May 28, 2009).........................17

*Roberts v. Texaco, Inc.*
979 F. Supp. 185 (S.D.N.Y. 1997) .................................................................................17

*Santos v. Yellowstone Props., Inc.*
No. 15 Civ. 3986 (PAE), 2016 WL 2757427 (S.D.N.Y. May 10, 2016) .........................15

*Sewell v. Bovis Lend Lease, Inc.*
No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ....................................16

*Torres v. Gristede's Operating Corp.*
No. 04-CV-3316 PAC, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ............................17

*Tyson Foods, Inc.  v. Bouaphakeo*
136 S.Ct. 1036 (2016)....................................................................................................12

*Wang v. Masago Neo Asian Inc*.
CV 14-6249, 2016 WL 7177514 (E.D.N.Y. Sept. 26, 2016)...........................................15

*Wolinsky v. Scholastic Inc.*
900 F. Supp. 2d 332 (S.D.N.Y. 2012) .............................................................................9

**Statutes**

Fair Labor Standards Act ....................................................................................passim

New York Labor Law .........................................................................................passim

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................3

## I.     INTRODUCTION

Named Plaintiffs Cara Nasisi and Robin Chernoff ("Named Plaintiffs"), on behalf of themselves and all other FLSA Opt-In Plaintiffs, seek approval of the parties' Joint Stipulation of Settlement ("Joint Stipulation"), attached as Exhibit 1. Under the terms of the Joint Stipulation, Defendant Comprehensive Health Management, Inc. ("Defendant") will pay $550,000 to resolve this wage and hour action for alleged unpaid overtime wages brought under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL) and for alleged failure to provide wage notices and proper wage statements under the NYLL.[1]

The Parties' proposed settlement resolves the claims of the 95 individuals who have filed consent forms to participate in this Action (including the Named Plaintiffs).  Because the proposed FLSA settlement is "fair and reasonable" and the proposed award of attorneys' fees is reasonable, the Court should grant this Motion and enter an order, in the form attached hereto as Exhibit 2, that: (1) approves the Joint Stipulation; (2) authorizes awards of (i) Plaintiffs' Attorneys Fees' in the amount of one-third of the Gross Settlement Amount; (ii) Plaintiffs' Litigation Expenses in the amount of $7,540.01; and (iii) Service Awards to the two Named Plaintiffs in the amount of $7,500, each; and (3) appoints Analytics Consulting LLC as the neutral third-party Settlement Administrator.

## II.     STATEMENT OF FACTS AND SUMMARY OF THE LITIGATION

### Factual Allegations

Defendant is a managed care company focused primarily on providing government-sponsored managed care services through Medicaid, Medicare Advantage, and Medicare Prescription Drug Plans. ECF 50, Def.'s Answer to 1st Am. Class And Collective Action Compl. ¶ 1 (Def's Answer). Named Plaintiff Cara Nasisi worked for Defendant as a Care Manager from

---

[1]     All capitalized terms are defined in the Joint Stipulation.

June 2010 to June 2018, and Named Plaintiff Robin Chernoff worked for Defendant as a Care Manager from July 2014 to March 2017. *Id.* ¶¶ 14, 15.

The Named Plaintiffs allege that they and the other care management employees who joined the lawsuit primarily performed non-exempt job duties including collecting information to document insureds' medical circumstances; inputting medical information into Defendant's computer systems; applying established guidelines to maximize utilization of plan resources through application of predetermined criteria; coordinating care by performing ministerial tasks like arranging appointments, referrals, and obtaining necessary authorizations from individuals; supplying health plan participants with additional information and resources to allow them to educate themselves about their health plan needs; and other similar work. ECF No. 45, First Amended Complaint at ¶ 10.  The Named Plaintiffs further allege that these job duties were routine and rote and did not involve the exercise of discretion and independent judgment with respect to matters of significance. *Id.* at ¶ 24. The Named Plaintiffs also allege that they and other care management employees worked more than 40 hours in one or more individual workweeks and were not paid overtime at one and one-half times their regular rate. *Id.* at ¶¶ 34-37, 42-43, 59, 86-91. The Named Plaintiffs claim that because they primarily performed non-exempt work, Defendant violated federal and New York state law by failing to pay them overtime wages when they worked over 40 hours per week. *Id.* at ¶¶ 92-94.

The Named Plaintiffs also allege Defendant failed to provide compliant wage notice and wage statements as required by the applicable provisions of the NYLL, and as a consequence, Defendant is liable for statutory damages to plaintiffs who worked in New York. *Id.* at ¶¶ 105-111.

Defendant does not admit any liability, denies any wrongdoing and denies that the FLSA

2

Opt-in Plaintiffs are entitled to any damages. ECF 50, Def.'s Answer ¶ 92-94. Defendant asserted affirmative defenses, including statutory exemptions. *Id.,* Affirmative Defense No. 20.  Defendant specifically asserts, among other defenses, that the Named Plaintiffs and Opt-in Plaintiffs performed exempt job duties and were properly classified as exempt under the FLSA and the NYLL, and that the proposed NYLL class would not meet the class certification requirements of Rule 23.

### B.    Overview of Investigation, Litigation, and Settlement Negotiations

The Named Plaintiffs filed this combined FLSA collective action and Rule 23 class action under the NYLL on May 8, 2019. ECF No. 1, Original Class and Collective Action Complaint. They filed their First Amended Class and Collective Action Complaint on July 29, 2019, adding the NYLL wage statement and wage notice claims to the allegations. *See* ECF No 45. As explained in the following paragraphs, the Plaintiffs had sufficient information to thoroughly evaluate their claims and Defendant's defenses at the time the settlement was reached.

### 1.    Plaintiffs' FLSA Claim was Conditionally Certified as a Collective Action

Plaintiffs filed a motion for Step-One Notice pursuant to the FLSA on September 29, 2019. Plaintiffs supported the contested Motion for Step-One Notice with declarations from thirteen Care Management Employees as well as Defendant's job descriptions. Plaintiffs asserted that these declarations and job descriptions demonstrated that Defendant used combinations of the same labels to interchangeably refer to the positions held by the Care Management Employees. ECF Nos. 55, 55-1.

Both before and after the Named Plaintiffs filed the contested Motion for Step One Notice, the Parties conferred on whether they could agree to conditional certification of a collective action under the FLSA. Exhibit 3, Declaration of Maureen A. Salas ¶ 15, (herein, "Salas Decl."). The

Parties were initially unable to reach such an agreement, which prompted Plaintiffs to file their contested motion, but the Parties later agreed to issue Step One notice to a narrowed FLSA class. *Id.* at ¶ 16. The parties later submitted an Agreed Motion to Conditionally Certify a narrowed class on November 15, 2019, which obviated the need to brief Plaintiffs' earlier filed motion. *See* ECF Nos. 54 and 70.  The Parties agreed that notice would be issued to Defendant's current and former employees in Illinois, Kentucky, New Jersey, and New York, working in one of the care management job positions identified by the parties. *Id.* at 2.  The Court conditionally certified the narrowed class and ordered notice to issue on November 15, 2019.  ECF No. 73.  The Opt-In Period closed on February 21, 2020, at which point 95 party plaintiffs had filed consent forms to participate in the litigation. Ex. 3, Salas Decl.¶ 17.

### 2. Summary of the Parties' Factual Investigation

During the course of this litigation, the Parties engaged in an extensive and detailed investigation and exchange of information regarding the number and job titles of potential class members; payroll information; hours worked; alleged complaints made to management regarding hours worked, unpaid overtime, and excessive caseloads; and the annual and wages notices given to New York Opt in Plaintiffs. Ex. 3, Salas Decl. ¶ 18.  Plaintiffs' counsel has thoroughly analyzed the merits of the case and the value of the FLSA Opt-in Plaintiffs' claims during the prosecution of this action. The discovery process included, among other things:  (1) conferring with the Named Plaintiffs and Opt-in Plaintiffs; (2) conferring with Defendant regarding the scope of its document production, including a putative class list and compensation data; (3) inspecting and analyzing the documents and materials produced by the Named Plaintiffs, Opt-in Plaintiffs and Defendant; (4) analyzing and researching the various legal positions taken and defenses raised by Defendant; (5) investigating and analyzing the guidelines used by care management employees in the

performance of their work; (6) drafting the motion for FLSA conditional certification, including obtaining thirteen declarations; (7) assembling data for calculating damages and analyzing that data to determine potential damages; and (8) investigating comparable settlements in similar cases involving allegedly misclassified managed care employees. *Id.*

The investigation conducted in this matter, as well as discussions between counsel, have been more than sufficient to give the Named Plaintiffs and Plaintiffs' Counsel a sound understanding of the merits of their positions and to evaluate the claims of the FLSA Opt-in Plaintiffs.

### 3.    History of Settlement Discussions

The Parties agreed to discuss resolution of the FLSA and NYLL claims on behalf of the 95 plaintiffs who filed consent forms in the case only. *Id.* The Court stayed the case on April 6, 2020, after the Parties agreed to mediation before a private mediator, with informal discovery prior to the mediation. ECF No. 100.

In advance of the Parties' mediation session, the Defendant provided documents to Plaintiffs, including pay data for all plaintiffs and wage notices for those plaintiffs who worked in New York. Ex. 3, Salas Decl. ¶ 20. The payroll records produced in .xls format contained more than ten thousand lines of data. *Id.* Finally, the Parties exchanged mediation statements in advance of the mediation. *Id.*

The Parties attended an online mediation on September 15, 2020, with Lynn P. Cohn, a certified mediator and Director of the Center on Negotiation and Mediation at Northwestern University Pritzker School of Law. Ex. 3, Salas Decl. ¶ 21. The Parties did not resolve this matter by the end of mediation, but the mediator made a mediator's proposal, and both Parties accepted it a few days later. *Id.* The Parties exchanged several drafts of the Joint Stipulation and successfully reached an agreement to resolve the case. *Id.*

5

## III.     SUMMARY OF SETTLEMENT TERMS

### The Plaintiffs

The Joint Stipulation is applicable to all "FLSA Opt-In Plaintiffs," which means the 95 individuals who filed consent forms to participate in this Action (including the Named Plaintiffs). Ex. 1, Joint Stipulation, § 1(g). All FLSA Opt-In Plaintiffs are identified on Attachment 1 of the Joint Stipulation. *Id*. Each FLSA Opt-In Plaintiff is eligible for a settlement recovery as a compromise of their claims for alleged overtime wages. *Id*., § 5(a).

The FLSA Opt-In Plaintiffs who worked in New York at any time between May 18, 2013 and August 15, 2020 are the "NY Opt-In Plaintiffs." Ex. 1, Joint Stipulation, § 1(h). These plaintiffs are eligible for a settlement payment as a compromise of their claims for alleged wage notice and wage statement penalties under the NYLL, as well as their claims for alleged overtime wages. *Id*., § 5(c).

### Gross Settlement Amount

The Gross Settlement Amount is $550,000.00, plus the employer's share of applicable state and federal payroll taxes associated with the Settlement Payments made to the FLSA Opt-In Plaintiffs.  Defendant will deposit the Gross Settlement Amount into a qualified settlement fund administered by a third-party administrator (the "Settlement Account"), from which the following payments shall be made: (i) the FLSA Opt-In Plaintiffs' Settlement Payments; (ii) the Named Plaintiffs' Service Awards; (iii) Plaintiffs' Counsel's attorneys' fees and litigation expenses; and (iv) the Settlement Administrator's settlement administration fees and expenses. Ex. 1, Joint Stipulation, §§ 1(p), 1(q), 4.  The Gross Settlement Amount less the amounts described in (ii) through (iv) above shall be described as the "Net Settlement Amount."  Other than the employer's share of payroll taxes, Defendant will not be required to pay more than the Gross Settlement Amount of $550,000. *Id.*, § 4.

6

139349275_2

**Monetary Awards and Distribution of Settlement Checks**

Each FLSA Opt-In Plaintiff will be allocated a pro rata portion of the Net Settlement Amount for settlement of alleged unpaid overtime wages, and each FLSA Opt-in Plaintiff who is a NY Opt-in Plaintiff shall also be allocated a pro rata portion of the Net Settlement Amount for settlement of alleged wage notice penalties and/or alleged NY wage statement penalties. Ex. 1, Joint Stipulation, § 5(a). The Joint Stipulation sets out in detail how each pro rata portion is calculated. *Id*., § 5. The estimated Settlement Payment for each FLSA Opt-In Plaintiff is identified on Attachment 1 to the Joint Stipulation. *Id*., § 5(f).

The Settlement Administrator will deliver the Settlement Payments via U.S. mail to each FLSA Opt-In Plaintiff, and the FLSA Opt-In Plaintiffs will have 180 days from the date of mailing to negotiate their Settlement Payments (the "Check Cashing Deadline"). *Id*., § 9(f)(i). Any portion of the Settlement Account that remains unclaimed after the 180-day Check Cashing Deadline shall be remitted by the Settlement Administrator to the cy pres recipient, the National Employment Law Project, a 501(c)(3) charitable organization. Ex. 1, Joint Stipulation, § 9(k).

**Limited Release for FLSA Opt-in Plaintiffs**

The Joint Stipulation does not contain a general release. In exchange for their Settlement Payments, and the other consideration detailed in the Joint Stipulation, FLSA Opt-In Plaintiffs who timely negotiate their settlement checks within the 180-day period before the Check Cashing Deadline will provide a limited release and will release the Released Parties from all claims or causes of action that were alleged in the Action or could have been alleged in the Action related to unpaid overtime wages allegedly owed as a result of the FLSA Opt-In Plaintiffs working in a salaried Care Management Job Position for Defendant during their Applicable Limitations Period. *Id*., § 6(a). The Named Plaintiffs and all NY Opt-in Plaintiffs who timely negotiate their settlement

checks also will release the Released Parties from all claims or causes of action that were alleged in the Action or could have been alleged in the Action related to wage statement and notice violations under the NYLL. *Id.*, § 6(b).

FLSA Opt-In Plaintiffs who do not negotiate their Settlement Payments shall not release their federal, state or local overtime or wage statement and notice claims against Defendant pursuant to the Joint Stipulation and their claims will be dismissed without prejudice. *Id.*, § 6(c). Only the Named Plaintiffs will be providing a release of claims against Defendant and their claims will be dismissed with prejudice regardless of whether they negotiate their Settlement Payments.

### Settlement Administration

The Parties have selected Analytics Consulting LLC to act as the Settlement Administrator. Ex. 1, Joint Stipulation, § 1(n). The cost of administering the Settlement will be paid by Defendant from the Gross Settlement Amount. *Id.* at § 4(a).

### Service Awards

The Joint Stipulation allows the Named Plaintiffs to apply for Service Awards in the amount of Seven Thousand Five Hundred Dollars ($7,500.00), with such Service Awards to be paid from the Gross Settlement Amount in acknowledgment of their time spent providing documents and information for the prosecution of this litigation on behalf of the FLSA Opt-In Plaintiffs, as well as conferring with Plaintiffs' Counsel, filing the Action, and participating in the mediation. The Service Awards shall be paid from the Gross Settlement Amount. *Id.* at § 7(a).

### Attorneys' Fees and Litigation Expenses

Plaintiffs' Counsel seeks approval of an award of Attorneys' Fees and Litigation Expenses. Plaintiffs' Counsel seek fees in the amount of one-third of the Gross Settlement Amount, $183,333.33, and Litigation Expenses not to exceed $10,000.00. *Id.* at § 8(a).

8

## IV.    THE COURT SHOULD APPROVE THE FLSA SETTLEMENT AS FAIR AND REASONABLE

### Standards for Evaluating the Proposed Settlement

A court examines a FLSA collective action settlement "with less scrutiny than a class action settlement; the court simply asks whether the proposed settlement reflects a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation." *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014).

The fairness and reasonableness of a proposed FLSA settlement is considered in light of the totality of circumstances, including specific factors such as:

> [i] the plaintiff's range of possible recovery; [ii] the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; [iii] the seriousness of the litigation risks faced by the parties; [iv] whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and [v] the possibility of fraud or collusion.

*Galindo v. E. Cty. Louth Inc.*, No. 16 CIV. 9149 (KPF), 2017 WL 5195237, at *3 (S.D.N.Y. Nov. 9, 2017) (quoting *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations omitted).

The Court also examines the settlement for the potential for abuse, assessing whether the settlement complies with the Second Circuit's admonitions articulated in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The admonitions include whether the settlement has a "highly restrictive confidentiality provisions," "an overbroad release," or a fee request "without adequate documentation." *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 SIL, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks*, 796 F.3d at 206).

### The Proposed Settlement Meets the Wolinsky Factors

The Joint Stipulation is fair and reasonable under all the factors the Court must consider.

### 1.    The Plaintiffs' Range of Possible Recovery

Plaintiffs' recovery is fair and reasonable, given the range of possible recovery and the assumptions used in calculating Plaintiffs' damages. "The determination of whether a given settlement amount is reasonable in light of the best possible recovery does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015). Instead "there is a range of reasonableness with respect to a settlement, a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id.*[2]

By Plaintiffs' counsel's estimation, the Gross Settlement Amount represents 61% of the overtime wages allegedly owed to all Opt-in Plaintiffs if five additional hours are added to each week they worked during their Applicable Limitations Period and 61% of half the notice and statement penalties allegedly owed to NY Opt-in Plaintiffs if they were awarded the maximum penalties in each year they worked during their Applicable Limitations Period. Ex. 3, Salas Decl. ¶ 31.

Here, the result is fair and reasonable in part because the settlement must be considered in light of the very real risk that the Second Circuit's decision in *Isett v. Aetna Life Ins. Co.*, No. 18-3271-CV, 2020 WL 201682 (2nd Cir. Jan. 14, 2020) could reduce the collective's recovery to zero. In *Isett*, the Second Circuit affirmed summary judgment for the employer, Aetna, on the application of the professional exemption to a utilization management position, holding that the plaintiff (an RN who reviewed denials of claims for medical services) was an exempt professional employee. *Id.* In the wake of this development in the law jeopardizing any recovery for any

---

[2] *See also Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 896 (6th Cir. 2019) (evaluating whether settlement was fair, reasonable and adequate despite "lack of records for many class members").

10

member of the collective, Plaintiffs' Counsel successfully negotiated a concrete benefit for all members of the collective. *See Barsa v. Beacon Health Options, Inc.,* No. 19-CV-1646 (JPO)(BCM) (S.D.N.Y. September 28, 2020), ECF No. 149 (citing the Second Circuit's decision in *Isett* and the dispute over hours worked as reasons that supported approving a FLSA settlement representing 65% of the overtime wages allegedly owed to 41 care management employees if they worked an 3 additional hours a week).

Because Defendant considered the FLSA Opt-In Plaintiffs to be exempt, Defendant did not maintain time records for most of its salaried care management employees. Ex. 3, Salas Decl. ¶ 32.  In the absence of time records and other records that could serve as a proxy for time worked, Plaintiffs are not in a position to determine the number of hours they worked each week with precision. *Id.* Plaintiffs are, however, able to determine a possible range of recovery, through the following sources:

- The payroll records Defendant produced for Plaintiffs;

- Plaintiffs' Counsel's investigation and communication with Plaintiffs;

*Id.*

The payroll records Defendant produced do not identify the hours Plaintiffs worked, but they do identify the pay periods in which plaintiffs took days off work because of holidays, vacation, and sick leave. Plaintiffs' damage calculations account for the individual weeks each FLSA Opt-in Plaintiff worked less than a full work week. Ex. 1, Joint Stipulation, § 5(b). Plaintiffs' Counsel independently investigated the hours worked by members of the collective and found that FLSA Opt-in Plaintiffs reported working on average between 40 and 60 hours a week. Ex. 3, Salas Decl. ¶ 33. In contrast, Defendant claims that any alleged overtime hours were minimal and were only worked on an occasional basis.

Because the Parties strongly disagree over the number of hours the FLSA Opt-in Plaintiffs worked, the Court would not be able to resolve this issue short of trial. If the question of hours worked were presented to a jury, the jury may credit some of Plaintiffs' testimony and some of Defendant's testimony. For example, in *Monroe v. FTS USA, LLC*, 860 F.3d 389, 405 (6th Cir. 2017), the jury partially accepted the defendants' defenses and determined that the testifying technicians worked fewer hours than they claimed, which resulted in a reduction of damages. *See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1044 (2016) (the jury determined some of the hours plaintiffs spent donning and doffing protective gear was compensable and some was not and reduced plaintiffs' damages in half).

The Parties recognize that at trial, the jury could resolve the question of hours worked with a determination of less than or greater than 5 hours worked per week. The table below shows the Named Plaintiffs' calculation of the FLSA Opt-in Plaintiffs' possible recovery if a jury were to find that the FLSA Opt-in Plaintiffs worked less than or more than 5 additional hours per week.

| Additional Hours | 3 | 5 | 10 |
|---|---|---|---|
| Overtime Wages | $466,091.95 | $742,052.68 | $1,359,163.74 |
| 100% Liquidated Damages | $466,091.95 | $742,052.68 | $1,359,163.74 |

Ex. 3, Salas Decl. ¶ 34.

Given the range of possible outcomes, the Parties' settlement calculation is reasonable in light of the risks Plaintiffs face prevailing at trial, both with respect to proving the merits of their claims and their alleged damages, and in facing likely appeals. *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of 25% of the maximum possible recovery).

The reasonableness of the award is further demonstrated by the fact that each FLSA Opt-in Plaintiff will be able to choose whether to negotiate their Settlement Payment check in exchange for a limited release of their claims.

### 2.    The Settlement Allows the Parties to Avoid Significant Expenses

The settlement satisfies the second *Wolinsky* factor because it enables both sides to forego foreseeable costs and risks. Had this matter not resolved, at least some of the Opt-in Plaintiffs would have been required to sit for depositions, and Defendant would have requested the production of information and documents related to work hours and job activities for each of the FLSA Opt-in Plaintiffs. Ex. 3, Salas Decl. ¶ 36. Similarly, Plaintiffs would have requested documents from Defendant in discovery that could serve as a proxy for hours worked. *Id.* Such records would include computer sign-in data, case management system data, facsimile logs, telephone logs and reports, time-stamped entries or documents, email meta data, time studies, security logs, invoices, expense reports, bills, work schedules, and other documents. *Id.* The case was resolved prior to either side incurring the tremendous costs associated with conducting written and deposition discovery and an ESI search and document production. *Id.*

Defendant is willing to enter this settlement and forego continued litigation over significant disputed issues of law and fact in order to avoid further costs of litigation. Plaintiffs are willing to resolve their claims for less than they might receive at trial because they will receive a guaranteed payment, and avoid the uncertainty of decertification, a summary judgment motion, and trial. Furthermore, while the Parties engaged in informal discovery prior to mediation, the formal discovery process had not begun when this case settled. Document production and deposition practice would impose considerable expenses on all parties, which will be avoided with this settlement.

### 3. Plaintiffs' Litigation Risk Warrants Approval of the Settlement

The settlement resolves contested issues and is monetarily significant given the risks of continued litigation. The settlement covers Plaintiffs' asserted claims and a reasonable amount in attorneys' fees, and is fair given the multiple defenses to liability Defendant would raise with continued litigation.  Defendant would argue that Plaintiffs are unable to certify a Rule 23 class or maintain the conditionally certified FLSA collective and would argue that the differences in job duties between the collective raise individualized inquiries.  Defendant would likely also argue that it lacked any policy or practice of *requiring* employees in Plaintiffs' positions to work overtime. Finally, on the merits, as discussed above in Section B.1 of this memorandum, Defendant would argue that the Plaintiffs are exempt from federal and state overtime laws under the learned professional exemption and the administrative exemption. Plaintiffs acknowledge that there are risks in continuing to litigate this matter, including the risk of an adverse finding, the substantial delay of payment pending litigation, and the further potential delay of an appeal.

### 4. The Settlement is the Product of Arm's Length Bargaining between Experienced Counsel Following a Mediation

Lastly, approval of this settlement is supported under the fourth and fifth factors. Specifically, the proposed settlement is fair and reasonable because Plaintiffs were represented by competent and experienced counsel throughout the pre-suit, litigation, and settlement process. There is no risk of fraud or collusion. This case was mediated before an objective, neutral, and experienced third party and the parties exchanged information and legal authority to support their positions prior to this mediation.  Ultimately, each Plaintiff will decide whether or not to negotiate their Settlement Payment check in exchange for the limited release they would be providing Defendant.

14

**The Settlement Does Not Raise Any Potential for Abuse**

None of the three indicia identified by the Second Circuit in *Cheeks* are present in this settlement. The settlement does not include a highly restrictive confidentiality provision. Nor is the release overbroad. All Plaintiffs, including the Named Plaintiffs, will provide only a limited release of claims. Finally, Plaintiffs' Counsel's request for fees is supported by adequate documentation.  Ex. 3, Salas Decl. ¶¶ 39-42.

## V.     PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES ARE REASONABLE

Plaintiffs ask the Court to approve fees equal to one-third of the Gross Settlement Amount: $183,333.33.  This request is reasonable in light of the time Plaintiffs' counsel spent investigating, litigating, and settling this case, and will spend administering the settlement.  Ex. 3, Salas Decl. ¶¶ 10-21. Plaintiffs' counsel will also be reimbursed for $7,540.01 in costs actually incurred by Plaintiffs' counsel in litigating this action to date. Ex. 3, Salas Decl. ¶¶ 53-57; Ex. 5, Hedgpeth Decl. ¶¶ 16-18.[3]

In FLSA settlements, "courts in this District typically approve a fee of one-third or less of the settlement amount." *Mobley v. Five Gems Mgmt. Corp.*, No. 17 CIV. 9448 (KPF), 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018); *see also Santos v. Yellowstone Props.*, *Inc*., No. 15 Civ. 3986 (PAE), 2016 WL 2757427, at *4 (S.D.N.Y. May 10, 2016) (noting that "one-third-of-settlement sum is consistent with contingency fees that are commonly accepted in the Second

---

[3] "Costs relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable." *Wang v. Masago Neo Asian Inc*., CV 14-6249, 2016 WL 7177514, at *4 (E.D.N.Y. Sept. 26, 2016) (citation and internal quotation marks omitted) (awarding $2,500 in litigation costs in addition attorneys' fees).

Circuit in FLSA cases") (internal citations omitted). Accordingly, Plaintiffs' counsel requests fees equal one-third of the gross settlement.

The practice in the Second Circuit has been to apply the percentage method and informally use the lodestar method as a "baseline" or "cross check." *See, e.g.*, *Mobley*, 2018 WL 1684343, at *4 (where one-third of a FLSA settlement is requested, "courts typically perform a lodestar 'cross-check'"). Where the lodestar method is used as a mere cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Id.*

For purposes of determining a reasonable attorney's fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 896, 895 (1984). Werman Salas P.C. overwhelmingly represents employees on a contingent fee basis, but from time to time, it charges clients on an hourly basis. Ex. 3, Salas Decl. ¶ 44, 47-48. The rates sought by Class Counsel here are in line with the amounts they charge to hourly paying clients. *Id.*

Plaintiffs' Counsel's lodestar amounts to over $300,000, which is more than the one-third of the fund fee award Plaintiffs' Counsel requests. Ex. 3, Salas Decl. ¶ 42, attachments A-B, Ex. 4, Siegel Decl. ¶ 13, Attachment A, Ex. 5, Hedgpeth Decl. ¶ 13, Exhibit A. This amounts to a *negative* multiplier of 0.61, which is reasonable. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (noting that courts in this District "commonly award lodestar multipliers between two and six").

16

Plaintiffs' Counsel seeks reimbursement for $7,540.01 in litigation costs. These costs were incurred pursuing this litigation and include filing and service fees, travel costs, mediation costs, and costs associated with issuing the FLSA notice.  Ex. 3, Salas Decl. ¶ 53-57, attachment C; Ex. 5, Hedgpeth Decl. ¶¶ 16-18, attachment B.  Because these expenses were reasonably incurred, they should be awarded from the settlement fund. *Beckman*, 293 F.R.D. at 482 (S.D.N.Y. 2013) ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses").

## VI.    NAMED PLAINTIFFS ARE ENTITLED TO SERVICE AWARDS

Service awards are "common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Oleniak v. Time Warner Cable Inc.*, No. 12-CV-3971 (KPF), 2013 WL 12447094, at *10 (S.D.N.Y. Dec. 17, 2013).[4]

In light of the efforts of Named Plaintiffs, the settlement provides for each receiving a check in the amount of $7,500 in addition to their pro rata share of the settlement.  Named Plaintiffs spent time and effort conferring with Plaintiffs' Counsel, provided information that assisted in the prosecution of this litigation, and they assumed the risk that future employers may look unfavorably upon them for filing a suit against an employer. Ex. 3, Salas Decl. ¶ 25.  The requested service awards in total amount to approximately 2.7% of the Gross Settlement Amount, which is

---

[4] *See, also*, *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 PAC, 2010 WL 5507892, at *1 (S.D.N.Y. Dec. 21, 2010), aff'd, 519 F. App'x 1 (2d Cir. 2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); *Clark v. Ecolab Inc.*, No. 04CIV.4488PAC, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) (granting service awards of $10,000 to each of 7 named plaintiffs); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 199 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

17

a reasonable percentage. *See Reyes v. Buddha-Bar NYC*, No. 08 CIV. 02494(DF), 2009 WL 5841177 (S.D.N.Y. May 28, 2009) (awards of $7,500 each to three named plaintiffs, representing approximately 3 percent of the total $710,000 settlement amount, was reasonable).

**VII.    CONCLUSION**

Accordingly, Plaintiffs respectfully request the Court grant this Motion and enter an order, in the form attached hereto as Exhibit 2, that: (1) approves the Joint Stipulation; (2) authorizes awards of (i) Plaintiffs' Attorneys Fees' in the amount of one-third of the Gross Settlement Amount; (ii) Plaintiffs' Litigation Expenses in the amount of $7,540.01; and (iii) Service Awards to the two Named Plaintiffs in the amount of $7,500, each; and (3) appoints Analytics Consulting LLC as the neutral third-party Settlement Administrator.

Dated:  January 13, 2021                    Respectfully submitted,

                                            s/Maureen A. Salas
                                            One of Plaintiffs' Attorneys

139349275_2