# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**CARA NASISI, ROBIN CHERNOFF, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**

    *Plaintiffs*,

**v.**

**COMPREHENSIVE HEALTH MANAGEMENT, INC.,**

    *Defendant*.

**Civil Action No.** 1:19-cv-4132 (KPF)

### JOINT STIPULATION OF SETTLEMENT

This Joint Stipulation of Settlement ("Joint Stipulation") was made and entered into by Named Plaintiffs Cara Nasisi and Robin Chernoff ("Named Plaintiffs"), on behalf of themselves and all other FLSA Opt-In Plaintiffs, as that term is defined herein, and Defendant Comprehensive Health Management, Inc. ("Defendant"), and is conditioned upon the Court's approval.

1. DEFINITIONS

The following terms, when used in this Joint Stipulation, have the meanings set forth below, except when they are otherwise or more precisely defined in another section.

    (a)    "Action" means the civil action filed in the Southern District of New York, *Nasisi v. Comprehensive Health Mgt., Inc.,* Case Number 1:19-cv-4132 (KPF).

    (b)    "Applicable Limitations Period" means, for the Non-NY Opt-in Plaintiffs, each week worked between three years prior to their opt-in date and November 30, 2020, and for the NY Opt-in Plaintiffs, each week worked between May 18, 2013 and November 30, 2020.

(c)     "Approval Date" means the date on which the Court enters an order granting approval of this Joint Stipulation of Settlement.

(d)     "Care Management Job Position" includes the following job positions: Care Manager, Care Manager, Sr., Field Care Manager (including Pediatric Field Care Managers), Field Care Manager, Sr., Behavioral Health Care Manager, Behavioral Health Care Manager, Sr., Clinical Social Worker, Clinical Social Worker, Sr., Onsite Inpatient Care Manager, Behavioral Health UM Care Manager, Behavioral Health UM Care Manager Sr., Field Service Coordinator, RN, Field Service Coordinator, Sr., and Utilization Review, RN.

(e)     "Court" means the United States District Court for the Southern District of New York, Eastern Division.

(f)     "Effective Date" means the first date the Approval Order is no longer appealable, which shall be thirty-one (31) days after the Parties' motion to approve this Joint Stipulation is granted by the Court if no timely appeal of such order is filed, or if an appeal is filed, the date on which such appeal is final.

(g)     "FLSA Opt-In Plaintiffs" shall mean the 95 individuals who filed consent forms to participate in this Action. All FLSA Opt-In Plaintiffs are identified on Attachment 1 to this Joint Stipulation.

(h)     "NY Opt-in Plaintiffs" means the FLSA Opt-in Plaintiffs who worked for Defendant in New York at any time between May 18, 2013 and August 15, 2020.  The NY Opt-in Plaintiffs are identified on Attachment 1.

(i)     "Non-NY Opt-in Plaintiffs" means all FLSA Opt-in Plaintiffs who worked for Defendant in states outside New York in the work weeks between May 18, 2013 and August 15, 2020. The Non-NY Opt-in Plaintiffs are identified on Attachment 1.

(j)    "Parties" means the FLSA Opt-In Plaintiffs and Defendant, collectively and, separately, each a "Party."

(k)    "Plaintiffs' Counsel" means Werman Salas P.C., the Hedgpeth Law Firm, P.C., Siegel Law Group PLLC, and the Sattiraju Law Firm, P.C.

(l)    "Released Parties" means (i) Defendant and any past or present parents, subsidiaries, affiliates, insurers, insurance policies, and benefits plans; (ii) each of the past and present officers, directors, agents, employees, equity holders (shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries, and attorneys of the entities and plans described in this sentence; and (iii) the predecessors, successors, transferees, and assigns of each of the persons and entities described in this sentence. The "Released Parties" specifically include Centene Corporation and Centene Management Company, LLC.

(m)    "Settlement" shall mean the resolution of the Action as effectuated by this Joint Stipulation.

(n)    "Settlement Account" shall be a Qualified Settlement Fund established and controlled by the Settlement Administrator, Analytics Consulting LLC,  under Section 468B of the Internal Revenue Code and Treas. Reg. §1.468B-1, 26 C.F.R. § 1.468B-1, *et seq,* into which the Gross Settlement Amount will be deposited.

(o)    "Gross Settlement Amount" shall refer to the common settlement fund that will be funded by Defendant in the amount of Five Hundred and Fifty Thousand and No/ 100 Dollars ($550,000.00), as well as the employer's share of applicable state and federal payroll taxes associated with the Settlement Payments made to the FLSA Opt-In Plaintiffs, and that will be distributed in accordance with this Joint Stipulation.

(p)     "Net Settlement Amount" shall be the Gross Settlement Amount minus the amounts approved by the Court and paid to (i) the Named Plaintiffs for Service Awards, (ii) Plaintiffs' Counsel for attorneys' fees and litigation expenses, and (iii) the Settlement Administrator for settlement administration fees and expenses.

(q)     "Settlement Payments" means the amounts to be paid to FLSA Opt-In Plaintiffs from the Net Settlement Amount as described in Section 5 of this Joint Stipulation.

2.     THIS JOINT STIPULATION IS CONTINGENT ON COURT APPROVAL AND DISMISSAL OF THE ACTION

(a)     If, for any reason, the material terms of this Joint Stipulation are not approved by the Court, the Parties will work in good faith to modify the settlement in order to obtain court approval. Whether or not the Joint Stipulation is approved, neither the Joint Stipulation nor any document, statement, proceeding, or conduct related to this Joint Stipulation, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to any Party. Pending Court Approval, the Parties agree to stay the Action, and the Parties shall not pursue any discovery or otherwise litigate the claims at issue in the Action.

(b)     This Joint Stipulation is further contingent upon the dismissal of the Action. The Parties agree that all claims that were or could have been asserted on the basis of the allegations asserted in the Action shall be dismissed with prejudice to the fullest extent permitted under principles of res judicata with respect to the Named Plaintiffs and those FLSA Opt-In Plaintiffs who negotiate (i.e., cash or deposit) their Settlement Payment checks. The claims of FLSA Opt-in Plaintiffs who do not negotiate their Settlement Payment checks shall be dismissed without prejudice.

3. STATEMENT OF NO ADMISSION

(a)     Although the Parties do not abandon the positions they took in the Action, they believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests.  In light of these realities, the Parties believe that this Joint Stipulation is fair, reasonable, adequate, and the best means of resolving the disputes between and among them.

(b)     Defendant denies all claims as to liability, wrongdoing, damages, penalties, interest, fees, injunctive relief and all other forms of relief, as well as the class and collective allegations asserted in the Action.  Defendant further denies that this Action is appropriate for class or collective treatment for any purpose other than settlement.  Defendant has agreed to resolve the Action via this Joint Stipulation, but to the extent this Joint Stipulation is deemed void, Defendant does not waive, but rather expressly reserves, all rights to challenge any and all claims and allegations asserted by Named Plaintiffs in the Action and/or any current or future Opt-In Plaintiff should the case proceed, upon all procedural and substantive grounds, including without limitation the ability to challenge collective and class action treatment on any grounds.

4. MONETARY TERMS OF SETTLEMENT

(a)     In order to settle the Action, and as consideration for the release of claims from the FLSA Opt-In Plaintiffs as described in Section 6 of this Agreement, dismissal of the Action, and the other good and valuable consideration described herein, within seven (7) days after the Effective Date Defendant will deposit into the Settlement Account the amount of Five Hundred and Fifty Thousand and No/ 100 Dollars ($550,000.00), as well as the employer's share of applicable state and federal payroll taxes associated with the Settlement Payments made to the FLSA Opt-In Plaintiffs, which shall be used to provide for: (i) Settlement Payments to the FLSA Opt-In Plaintiffs, as described in this Joint Stipulation; (ii) Service Awards to the Named Plaintiffs;

(iii) Plaintiffs' Counsel's Attorneys' Fees and Litigation Expenses; and (iv) the Settlement Administrator's settlement administration costs.

(b)     The Gross Settlement Amount shall be allocated as follows, subject to Court approval:

(i)     In addition to their *pro rata* share of the Net Settlement Amount, Named Plaintiffs Cara Nasisi and Robin Chernoff shall receive an additional payment of $7,500.00, each, as a Service Award.

(ii)     A sum of $183,333.33 shall be paid to Plaintiffs' Counsel for Plaintiffs' Attorneys' Fees, and an amount not to exceed $10,000.00 shall be paid to Plaintiffs' Counsel for reasonably incurred Litigation Expenses.

(iii)     A sum of $8,501 shall be paid to the Settlement Administrator for the fees and expenses it incurs administering the Settlement.

(c)     Defendant's total obligation under this Joint Stipulation shall not exceed $550,000.00, inclusive of all payments described in this section and the employees' portion of any legal and tax withholdings, but excluding Defendant's payment of the employer's share of applicable state and federal payroll taxes associated with the Settlement Payments made to the FLSA Opt-In Plaintiffs, which sum Defendant will also deposit into the Settlement Account in addition to the Gross Settlement Amount.

5.     ALLOCATION OF NET SETTLEMENT AMOUNT

(a)     Each FLSA Opt-In Plaintiff shall be allocated a pro rata portion of the Net Settlement Amount for alleged unpaid overtime wages. Each FLSA Opt-in Plaintiff who is a NY Opt-in Plaintiff shall also be allocated a pro rata portion of the Net Settlement Amount for alleged NY wage notice penalties and/or NY wage statement penalties.

(b)     The pro rata settlement amounts allocated to each FLSA Opt-in Plaintiff for alleged unpaid overtime wages shall be calculated as follows:

(i)     For each work week an FLSA Opt-in Plaintiff worked in a salaried Care Management Job Position during his or her Applicable Limitations Period, the number of hours he or she was paid under the Earnings Code "Regular" will be summed to arrive at the number of "Work Hours Paid."

(ii)     To determine the Work Hours Paid in a particular work week, each bi-weekly Pay Period will be split into two work weeks, with Work Hours Paid from 0 to 40 hours allotted to Work Week 1, and any Work Hours Paid greater than 40 allotted to Work Week 2.

(iii)     "Additional Settlement Hours" will then be added to the Work Hours Paid in each work week to compute the "Total Settlement Hours Per Work Week." For settlement purposes only, the Additional Settlement Hours added to each work week shall be 5 hours.

(iv)     The amount of Earnings paid in each Pay Period under the following Earnings Codes ("Pay Period Earnings") will then be summed to determine the FLSA Opt-In Plaintiff's regular earnings for the Pay Period: Regular Earnings, OT Earnings, 6_OnCallPay, 21_FltHoliday, 23_PTO, and 27_Holiday.

(v)     The Pay Period Earnings will then be allocated fifty percent (50%) to Work Week 1, and fifty percent (50%) to Work Week 2 (the "Weekly Earnings" for each work week).

(vi)     The Settlement Regular Rate for each work week will then be calculated by dividing the Weekly Earnings for that work week by the Total Settlement Hours Per Work Week for the same work week.

(vii)    For each work week where the Total Settlement Hours Per Work Week exceeds 40 hours using this calculation, the "Settlement Overtime Hours " in the work week shall equal the number of hours worked over 40 (for example, if the Total Settlement Hours Per Work Week is 45 hours for a particular work week, the Settlement Overtime Hours for that work week will be 5 hours).

(viii)   The number of Settlement Overtime Hours in each work week will then be multiplied by one-half (0.5x) the FLSA Opt-In Plaintiff's Settlement Regular Rate to determine the gross amount of the "Settlement Overtime Wages for the Work Week;"

(ix)     The sum of the Settlement Overtime Wages for the Work Week for all work weeks in the Applicable Limitations Period shall equal the amount of "Total Settlement Overtime Wages."

(c)      The amounts allocated to each NY Opt-in Plaintiff for alleged NY wage notice penalties and NY wage statement penalties shall be calculated as follows:

(i)      The number of weeks that each NY Opt-in Plaintiff worked between May 18, 2013 and February 26, 2015 is referred to as "NY Weeks" and the number of days that each NY Opt-in Plaintiff worked in New York between February 27, 2015 and August 15, 2020 is referred to as "NY Days."

1.       Alleged Wage Notice Settlement Amount

DocuSign Envelope ID: CF15217B-E14E-4241-83F8-93D545E652C6

    a.     If a NY Opt-in Plaintiff was hired before February 27, 2015, the Wage Notice Settlement Amount is the number of NY Weeks multiplied by $50/week, or $2,500, whichever is less.

    b.     If a NY Opt-in Plaintiff was hired on or after February 27, 2015, the Wage Notice Settlement Amount is the number of NY Days multiplied by $50/day, or $5,000, whichever is less.

    2.     Alleged Wage Statement Settlement Amount

    a.     For the period a NY Opt-in Plaintiff worked between May 18, 2013 and February 26, 2015, the Wage Statement Settlement Amount is the number of NY Weeks during that period multiplied by $100, or $2,500, whichever is less.

    b.     For the period a NY Opt-in Plaintiff worked after February 27, 2015, the Wage Statement Settlement Amount is the number of NY Days during that period multiplied by $250/day, or $5,000, whichever is less.

    c.     For NY Opt-in Plaintiffs who worked both before and after February 27, 2015, the Wage Statement Settlement Amount is the total of items 2(a) and 2(b) above, or $5,000, whichever is less.

    3.     Each NY Opt-in Plaintiff's Wage Notice Settlement Amount and Wage Statement Settlement Amount were added together and the total was reduced by 50%, and the resulting amount is referred to as "Total Notice and Statement Settlement Amount."

(d)    Each FLSA Opt-in Plaintiff's share of the Net Settlement Amount shall be determined by dividing the sum of his or her Total Settlement Overtime Wages plus Total Notice and Statement Settlement Amount (the numerator) by the Total Settlement Overtime Wages plus Total Notice and Statement Settlement Amount for all FLSA Opt-in Plaintiffs (the denominator).

DocuSign Envelope ID: CF15217B-E14E-4241-83F9-93D54EF652C6

The quotient shall be each FLSA Opt-in Plaintiff's "Ratable Share." The FLSA Opt-in Plaintiff's Settlement Payment shall be the product of the FLSA Opt-in Plaintiff's Ratable Share times the Net Settlement Amount.

  (e)  If an FLSA Opt-in Plaintiff's Settlement Payment is less than $100.00, the FLSA Opt-in Plaintiff's Payment will be increased to the Minimum Settlement Payment of $100.00. All Minimum Settlement Payments shall be subtracted from the Net Settlement Amount, which shall yield the "Adjusted Net Settlement Amount." Each FLSA Opt-in Plaintiff whose preliminary settlement payment exceeds $100.00 will have his or her Ratable Share recalculated, omitting data from all FLSA Opt-in Plaintiffs who are eligible to receive a Minimum Settlement Payment. The Settlement Payment for each FLSA Opt-in Plaintiff whose Settlement Payment exceeds $100.00 shall be computed by multiplying his or her recalculated Ratable Share by the Adjusted Net Settlement Amount. If, after the computations described in this paragraph are performed, any FLSA Opt-in Plaintiff's Settlement Payment is less than $100.00, the calculations described in this paragraph will be repeated so that each FLSA Opt-in Plaintiff is eligible to receive a minimum Settlement Payment of $100.00.

  (f)  Each FLSA Opt-in Plaintiff's estimated Settlement Payment is identified on Attachment 1.

  (g)  Each FLSA Opt-in Plaintiff's settlement payment shall be allocated among alleged overtime and alleged notice and statement penalties in proportion to such amounts as are computed to be due to such FLSA Opt-in Plaintiffs under this Section 5.

  (h)  Any amounts paid to a FLSA Opt-in Plaintiff for alleged notice and statement penalties or Service Awards shall be allocated as non-wage income, shall not be subject to

withholdings and deductions, and shall be reported to that FLSA Opt-in Plaintiff on an IRS Form 1099-MISC, if required by IRS regulations.

(i)     Any amounts paid to a FLSA Opt-in Plaintiff for alleged unpaid overtime wages will be split as follows

(i)     One half will represent a settlement of alleged wages.  Regular employee payroll deductions shall be taken out of this portion of each FLSA's Opt-In Plaintiff's Settlement Payment as determined by the Settlement Administrator. The Settlement Administrator shall withhold federal and state taxes on that amount for all FLSA Opt-In Plaintiffs based upon a flat withholding rate, which is reasonable and customary in accordance with Treas. Reg. 31.3402(g)-1(a)(2), and as is calculated by the Settlement Administrator. State tax will be withheld according to applicable state and federal withholding requirements, which the Settlement Administrator shall be responsible for appropriately completing.  The Settlement Administrator shall issue each FLSA Opt-In Plaintiff an IRS Form W-2 for this portion of the Settlement Payment, and shall remit all withheld tax payments to the appropriate taxing authorities.

(ii)     The other half will represent a settlement of alleged liquidated damages.  Payroll and tax deductions shall not be taken from this portion of each FLSA Opt-In Plaintiff's Settlement Payment. The Settlement Administrator shall issue each FLSA Opt-In Plaintiff an IRS Form 1099-MISC for the alleged liquidated damages portion of each Settlement Payment, if required by the IRS regulations.

(j)     The back of each FLSA Opt-in Plaintiff's check will contain the following limited endorsement:

By negotiating this check, I agree to be bound by the Joint Stipulation of Settlement in *Nasisi v. Comprehensive Health Mgt., Inc.,* Case Number

11

DocuSign Envelope ID: CF15217B-E14E-4244-83F9-93D54EE652C6

1:19-cv-4132 (KPF).  I release and discharge Comprehensive Health Mgt., Inc. and the other Released Parties from all claims released in the Joint Stipulation of Settlement, as stated in the Notice of Settlement.

(k)      The Parties agree that any calculations made pursuant to this Settlement regarding the Settlement Payments to be paid to FLSA Opt-in Plaintiffs are for purposes of this Settlement only, and do not give rise to any other rights under any benefit plans or otherwise. Settlement Payments made under this Joint Stipulation shall not be considered compensation under any of Defendant's employee benefit plans.

6.      RELEASE OF CLAIMS

(a)      The Named Plaintiffs, and all FLSA Opt-in Plaintiffs who negotiate their Settlement Payments, shall fully, finally, and forever release, compromise, relinquish, and discharge any and all of the Released Parties from any and all federal, state or local claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, losses, fines, liens, interest, restitution, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Action or could have been alleged in the Action related to unpaid overtime wages allegedly owed as a result of the FLSA Opt-In Plaintiffs working in a salaried Care Management Job Position for Defendant during their Applicable Limitations Period, including, but not limited to claims arising under the federal Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), including the New York Wage Theft Prevention Act ("WTPA"), the New Jersey State Wage and Hour Law, the Illinois Minimum Wage Act, KY Rev. Stat. Sec. 337.285, and any other applicable federal, state and municipal law (including common law, statutes, ordinances, and regulations), and including any related claims for liquidated, exemplary, or punitive damages, or penalties; any claims related to any of the foregoing for equitable relief (including injunctive or declaratory relief); and any claims related to any of the foregoing for interest and attorneys' fees and costs. The Named Plaintiffs and all FLSA

12

Opt-in Plaintiffs who negotiate their Settlement Payments, likewise covenant not to sue the Released Parties with respect to any of the claims the Named Plaintiffs and FLSA Opt-in Plaintiffs have released.

(b)    The Named Plaintiffs, and all NY Opt-in Plaintiffs who negotiate their Settlement Payments, shall also fully, finally, and forever release, compromise, relinquish, and discharge any and all of the Released Parties for any and all debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, losses, fines, liens, interest, restitution, actions, or causes of action of whatever kind or nature, whether known or unknown, that were alleged in the Action or could have been alleged in the Action related to wage statement and notice violations under the New York Labor Law ("NYLL"), including the New York Wage Theft Prevention Act ("WTPA"), and including any related claims for liquidated, exemplary, or punitive damages, or penalties; any claims related to any of the foregoing for equitable relief (including injunctive or declaratory relief); and any claims related to any of the foregoing for interest and attorneys' fees and costs.

(c)    FLSA Opt-In Plaintiffs who do not negotiate their Settlement Check shall not release their federal, state or local overtime or wage statement and notice claims against Defendant pursuant to this Joint Stipulation.

7.    <u>SERVICE AWARDS</u>

(a)    Plaintiffs' Counsel shall apply for Service Awards to Named Plaintiffs in the amount of Seven Thousand Five Hundred Dollars ($7,500.00) each, in acknowledgment of their time spent providing documents and information for the prosecution of this litigation on behalf of the FLSA Opt-In Plaintiffs, as well as conferring with Plaintiffs' Counsel, and filing the Action. The Service Awards shall be paid from the Gross Settlement Amount and shall be subject to

approval by the Court.  Defendant agrees not to oppose such application, so long as it is consistent with the provisions of this Joint Stipulation.

(b)     The Settlement shall not be contingent on the Court awarding the amount of Service Award requested by the Named Plaintiffs.  In the event that the Court awards lesser amounts than requested, the other terms of Settlement shall remain in full force and effect.

8.     ATTORNEYS' FEES AND LITIGATION EXPENSES

(a)     Plaintiffs' Counsel shall make an application to the Court for Attorneys' Fees and Litigation Expenses. The Attorneys' Fees sought will not exceed the amount of $183,333.33. The Litigation Expenses sought shall not exceed $10,000.00.  Plaintiffs' Counsel shall file such application with the Motion for Approval of the Joint Stipulation. Defendant will not oppose such application for fees and costs provided that the amounts requested by Plaintiffs' Counsel are consistent with this section.

(b)     Named Plaintiffs and Plaintiffs' Counsel understand and agree that Plaintiffs' Counsel's Attorneys' Fees and Litigation Expenses will be the full, final, and complete payment of all attorneys' fees and costs arising from and/or relating to the representation of all FLSA Opt-In Plaintiffs or any other attorneys' fees and costs associated with the investigation and/or prosecution of the Action.  As an inducement to Defendant to enter into this Joint Stipulation, and as a material condition thereof, Named Plaintiffs and Plaintiffs' Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim they may have against Defendant for attorneys' fees or costs arising from or relating to the individuals and matters identified in this Joint Stipulation.

(c)     All of Defendant's own legal fees, costs and expenses incurred in this Action shall be borne by Defendant.

14

9.     SETTLEMENT TIMELINE

The Parties agree to the following timeline for the completion of the Settlement and dismissal of the Action:

(a)     Settlement Approval: Named Plaintiffs shall file an Unopposed Motion for Approval of this Joint Stipulation as soon as practicable, but no later than 14 days after the Named Plaintiffs and Defendant execute this Joint Stipulation.

(b)     Production of Class Data: Within three (3) days of entry of the Order approving the Joint Stipulation, Plaintiffs' Counsel shall provide the Settlement Administrator with the following information for all FLSA Opt-In Plaintiffs: (i) name, (ii) last known address, (iii) last known telephone number, and (iv) total gross amount of his or her Settlement Payment. Plaintiffs' Counsel shall provide Defendant with the following information for all FLSA Opt-in Plaintiffs: (i) name, and (ii) total gross amount of his or her Settlement Payment. Within seven (7) days of Plaintiffs' Counsel's provision of such information to Defendant and the Settlement Administrator, Defendant shall provide the Settlement Administrator with the following information for all FLSA Opt-In Plaintiffs: (i) name; (ii) social security number; (iii) last state worked in for Defendant; and (iv) any other information needed for the Settlement Administrator to remit taxes and perform tax reporting for the settlement payments.  The Settlement Administrator agrees to keep this information confidential and use it only for the sole purpose of administering the settlement.

(c)     Calculation of the Employer Share of Payroll Taxes: Within fourteen (14) days of receipt of the combined set of Class Data from Plaintiffs' Counsel and Defendant as specified above, the Settlement Administrator shall determine the employer's share of payroll employment taxes on Settlement Payments to FLSA Opt-In Plaintiffs, and shall communicate such amount to the Parties with a detailed explanation of the calculations.  In the event of any dispute as to the calculation of the employer's share of payroll taxes, the Parties and Settlement Administrator shall

meet and confer in good faith in an attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination.

(d)  <u>Funding the Settlement Account:</u> Within seven (7) days of the Effective Date, Defendant will deposit $550,000.00 into the Settlement Account.

(e)  <u>Payment of the Employer Share of Payroll Taxes</u>: Within seven (7) days of the Effective Date, and provided that the Settlement Administrator has timely provided Defendant with the amount of payroll taxes due, Defendant shall also deposit an additional payment into the Settlement Account for the employer's share of payroll taxes, but if a dispute arises regarding the calculation of the employer's share of payroll taxes, Defendant shall deposit the additional payment for the employer's share of payroll taxes within seven (7) days of the resolution of such dispute. The Settlement Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis for all FLSA Opt-In Plaintiffs who timely negotiate their settlement checks. Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the employer's share of payroll tax required under this Section.  To the extent Defendant has remitted excess payroll taxes to the Settlement Account, the Settlement Administrator shall return those funds to Defendant within 14 days after the Check Cashing Deadline, as that term is defined herein, has expired.

(f)  <u>Issuance of Settlement Payments and Service Awards</u>: No later than fourteen (14) days after Defendant fully funds the Settlement Account, the Settlement Administrator shall make the following payments:

(i)  The Settlement Administrator shall deliver Settlement Payments via First Class U.S. Mail to each FLSA Opt-In Plaintiff for his or her ratable share of the Net Settlement Amount as discussed in Section 5 of this Joint Stipulation. The envelope containing the Settlement

16

Payment shall be marked on its face with the words "Important Court Notice." The Settlement Payment checks shall be negotiable by FLSA Opt-In Plaintiffs for 180 days from the date they were mailed by the Settlement Administrator (the "Check Cashing Deadline"). The Settlement Administrator shall include a notice letter drafted by Plaintiffs' Counsel, attached as Attachment 2 to this Joint Stipulation, with each check to each FLSA Opt-In Plaintiff explaining the terms of the Settlement and Joint Stipulation. The face of each check shall clearly state that the check must be negotiated within 180 days.

(ii)     The Settlement Administrator shall deliver the Named Plaintiffs' Service Awards to the Named Plaintiffs as Plaintiffs' Counsel directs.

(iii)     The Settlement Administrator shall wire any Court-approved award for Attorneys' Fees and Litigation Expenses to Plaintiffs' Counsel as Plaintiffs' Counsel directs.

(g)     Reminder Notice to FLSA Opt-In Plaintiffs.  If any FLSA Opt-In Plaintiff has not negotiated his or her Settlement Payment within thirty (30) days prior to the Check Cashing Deadline, the Settlement Administrator may, if requested by Defendant, issue a reminder notice to those FLSA Opt-In Plaintiffs, the language of which shall be agreed upon by counsel for the Parties and which shall be delivered by the same method used to deliver the Settlement Payment. Plaintiffs' Counsel may contact the FLSA Opt-in Plaintiffs at any time to inquire about their Settlement Payments, provided that Plaintiffs' Counsel shall not discourage any FLSA Opt-In Plaintiff from cashing a Settlement Payment.

(h)     Checks Returned as Undeliverable. If any Settlement Payment check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will forward the Settlement Payment to the forwarding address.  If any Settlement Payment is returned to the Settlement Administrator as undeliverable without a forwarding

DocuSign Envelope ID: CF15217B-E14E-4241-83F8-93D54FF652C6

address, the Settlement Administrator will run a new search for the FLSA Opt-In Plaintiff's updated address through available databases, such as Accurint or an equivalent commercial database, and will re-mail the Settlement Payment to the new address obtained in this manner, if any.  The Settlement Administrator will inform Plaintiffs' Counsel if a Settlement Payment is returned as undeliverable and will inform Plaintiffs' Counsel of any new address obtained through a database search. If, after this second mailing, the Settlement Payment is again returned as undeliverable, and if no other forwarding address is provided by the FLSA Opt-In Plaintiff or otherwise located by the Check Cashing Deadline, the notice mailing process shall end for that FLSA Opt-In Plaintiff.

(i)      Accounting to Counsel.  The Settlement Administrator shall provide the Parties' Counsel with an accounting of the proceeds disbursed and its withholding of each FLSA Opt-in Plaintiff's share of any applicable payroll taxes from that portion of each Settlement Payment allocated to wages, upon request by  either or both of the Parties' Counsel.

(j)      Settlement Payment Summary. Within fourteen (14) days after the expiration of the Check Cashing Deadline, the Settlement Administrator shall provide to Defendant's and Plaintiffs' Counsel: (A) scanned copies of the negotiated Settlement Payment checks, and (B) a list, in Excel format, of the names of all FLSA Opt-In Plaintiffs including, for each: (1) the amount of the FLSA Opt-In Plaintiff's Settlement Payment; (2) the amount of the Settlement Payment attributed to alleged wages, liquidated damages, and notice and statement penalties; and (3) an accounting of all cashed Settlement Payments and the residual amount remaining in the Settlement Account.

(k)      Remainder Amount. Any portion of the Net Settlement Amount that remains unclaimed after expiration of the Check Cashing Deadline ("Remainder Amount"), shall be

remitted by the Settlement Administrator to the cy pres recipient, the National Employment Law Project, a 501(c)(3) charitable organization.

10.   DESTRUCTION OF INFORMATION

Plaintiffs' Counsel confirm that they will destroy any contact information of non-opt-in Plaintiffs that was produced in this litigation within seven (7) days of entry of the Order approving the Joint Stipulation, and that they will not use any contact information of non-opt-in Plaintiffs that was produced in this litigation.

11.   NEUTRAL REFERENCE

Defendant agrees to provide Named Plaintiffs with no less than a reference which states the dates of the Named Plaintiffs' employment, the positions they held, and the job duties they performed. Defendant specifically agrees not to inform third party prospective employers inquiring into the Named Plaintiffs' employment with Defendant that Named Plaintiffs filed this Action against Defendant.

12.   MUTUAL FULL COOPERATION

The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Joint Stipulation, and exercise good-faith efforts to accomplish the terms and conditions of this Joint Stipulation.

13.   CONSTRUCTION

The terms and conditions of this Joint Stipulation are the result of lengthy, intensive, arm's-length negotiations between the Parties. Accordingly, this Joint Stipulation is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Joint Stipulation.

14.   INTEGRATION

This Joint Stipulation contains the entire agreement between the Parties relating to the

Settlement, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  There are no undisclosed side agreements between the Parties or their counsel. No rights hereunder may be waived except in writing.

15.     BINDING ON SUCCESSORS AND ASSIGNS

This Joint Stipulation shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

16.     MODIFICATION

This Joint Stipulation may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Joint Stipulation may not be discharged except by performance with its terms or by a writing signed by the Parties and approved by the Court.

17.     APPLICABLE LAW

The terms of this Joint Stipulation shall be governed by and construed in accordance with Illinois law.

18.     THIS SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

The Parties warrant and represent they have conducted a thorough investigation of the facts and allegations in the Action and have diligently pursued an investigation of the claims alleged in the Action. The Parties further represent and warrant that they believe this Settlement is a fair and reasonable resolution of this Action and that they have arrived at this Settlement in arms-length negotiations, accounting for all relevant factors, present and potential.  This Settlement was reached after extensive negotiations, facilitated by Mediator Lynn Cohn.

19.     RETENTION OF JURISDICTION

The Court shall retain jurisdiction with respect to the interpretation, implementation and

enforcement of the terms of this Joint Stipulation and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the Settlement embodied in this Joint Stipulation and all orders and judgments entered in connection therewith.

20.    COUNTERPARTS

This Joint Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Joint Stipulation, which shall be binding upon and effective as to all Parties. Electronic signatures compliant with the ESIGN Act and signatures transmitted by fax or .pdf shall have the same effect as an original ink signature.

21.    PARTIES' AUTHORITY

The signatories hereto represent that they are fully authorized to enter into this Joint Stipulation and bind the respective Parties to its terms and conditions.

By: _____     Dated: ____12/23/2020_____
    Plai_____i


By: _____     Dated: _____
    Plaintiff, Robin Chernoff


By: _____     Dated: ____01/08/21_____
    Comprehensive Health Management, Inc.

Its: ____VP, Secretary_____

21

enforcement of the terms of this Joint Stipulation and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the Settlement embodied in this Joint Stipulation and all orders and judgments entered in connection therewith.

20.   <u>COUNTERPARTS</u>

This Joint Stipulation may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Joint Stipulation, which shall be binding upon and effective as to all Parties. Electronic signatures compliant with the ESIGN Act and signatures transmitted by fax or .pdf shall have the same effect as an original ink signature.

21.   <u>PARTIES' AUTHORITY</u>

The signatories hereto represent that they are fully authorized to enter into this Joint Stipulation and bind the respective Parties to its terms and conditions.

By: _____        Dated: _____
       Plaintiff, Cara Nasisi

By: _____        Dated: __12/23/2020_____
       Plaintiff, Robin Chernoff

By: _____        Dated: _____
       Comprehensive Health Management, Inc.

Its: _____

DocuSign Envelope ID: CF15217B-E16E-4241-83F9-93D54EE652C6

# ATTACHMENT 1

**Nasisi v. Comprehensive Health Management, Inc.**
**Joint Stipulation of Settlement**
**Attachment 1 - FLSA Opt-In Plaintiffs**

|   | Opt-in Plaintiff | Empl ID | Last Name | First Name | Settlement Award |
|---|---|---|---|---|---|
| 1 | NY | 16777 | Arabova | Roza | $ 7,441.52 |
| 2 | Non-NY | 24465 | Austin | Nadine | $ 921.79 |
| 3 | Non-NY | 23307 | Baker | Carri Lee | $ 2,464.15 |
| 4 | NY | 30860 | Baranec | Janet | $ 3,711.28 |
| 5 | Non-NY | 22111 | Barrows | Dana | $ 2,155.77 |
| 6 | Non-NY | 23699 | Belcher | Caroll | $ 5,847.71 |
| 7 | NY | 21200 | Belliot | Norma | $ 5,421.10 |
| 8 | Non-NY | 26691 | Bethard | Erika M | $ 604.45 |
| 9 | NY | 27501 | Bhagirathee | Sandhya | $ 3,298.23 |
| 10 | NY | 25214 | Blumbergs | Sanjay | $ 2,322.51 |
| 11 | NY | 17635 | Boadi | Kate Akua | $ 8,124.26 |
| 12 | Non-NY | 20682 | Bove | Melissa | $ 5,763.81 |
| 13 | Non-NY | 24985 | Bradley | Stephanie | $ 3,982.49 |
| 14 | Non-NY | 18580 | Brown | Twanda L. | $ 729.24 |
| 15 | Non-NY | 9820 | Burke | Gerianne | $ 1,169.67 |
| 16 | Non-NY | 23117 | Burns | Arlene G | $ 1,498.36 |
| 17 | NY | 21053 | Byfield | Christine | $ 6,355.50 |
| 18 | NY | 19099 | Chernoff | Robin | $ 5,211.24 |
| 19 | Non-NY | 23067 | Coles DeFranco | Rochelle | $ 2,053.37 |
| 20 | Non-NY | 26069 | Curry Whitcomb | Lori | $ 2,996.33 |
| 21 | Non-NY | 19707 | Davies | Leahnata | $ 4,778.17 |
| 22 | NY | 28158 | DeCesario | Louise | $ 3,873.22 |
| 23 | NY | 16551 | Delaosa | Heidy | $ 13,811.84 |
| 24 | NY | 26060 | DeMarco | Renee | $ 3,480.98 |
| 25 | Non-NY | 25066 | DePoalo | Joann | $ 5,369.59 |
| 26 | Non-NY | 23811 | Dinkel | Ellen J. | $ 3,913.79 |
| 27 | Non-NY | 26754 | Farris | Angela | $ 851.05 |
| 28 | NY | 16043 | Freeman | Sjovyt | $ 7,577.66 |
| 29 | Non-NY | 19012 | Frye | Tiffany | $ 100.00 |
| 30 | Non-NY | 19553 | Gibbs | Penny | $ 100.00 |
| 31 | NY | 13760 | Goff | Kathleen | $ 11,453.72 |
| 32 | NY | 18803 | Gonzalez | Alex | $ 6,864.64 |
| 33 | Non-NY | 25500 | Greenidge | Keicha | $ 1,564.90 |
| 34 | NY | 29442 | Grove | Natalya A. | $ 3,253.49 |
| 35 | Non-NY | 29825 | Gulan | Jayna Susan | $ 2,156.47 |
| 36 | Non-NY | 17023 | Hampton | Larry R | $ 2,246.33 |
| 37 | Non-NY | 20693 | Harris | Obeghaenre | $ 712.78 |
| 38 | Non-NY | 7001 | Harrison | Rose Marie | $ 903.54 |
| 39 | Non-NY | 26998 | Harvey | Takeeba | $ 2,004.01 |
| 40 | Non-NY | 17444 | Hawkins | Jennifer | $ 2,558.53 |
| 41 | NY | 22654 | Herrera | Tyisha | $ 3,373.79 |

**Nasisi v. Comprehensive Health Management, Inc.**
**Joint Stipulation of Settlement**
**Attachment 1 - FLSA Opt-In Plaintiffs**

| | Opt-in Plaintiff | Empl ID | Last Name | First Name | Settlement Award |
|---|---|---|---|---|---|
| 42 | Non-NY | 18069 | Hinton | Toriawn | $ 100.00 |
| 43 | Non-NY | 24047 | Hogan | Haley E. | $ 1,130.50 |
| 44 | Non-NY | 24820 | Hunt | Letitia M. | $ 3,613.72 |
| 45 | Non-NY | 17288 | Jones | Alicia | $ 1,765.75 |
| 46 | Non-NY | 27604 | Jones | Laquisha | $ 3,384.95 |
| 47 | Non-NY | 25895 | Kates | Dorothy | $ 2,624.65 |
| 48 | Non-NY | 16031 | Lacy | Alicia | $ 1,704.74 |
| 49 | NY | 16382 | Lee | Novlett | $ 8,316.70 |
| 50 | Non-NY | 17267 | Lindsey | Brenda | $ 2,841.62 |
| 51 | NY | 30643 | Loveric | Melanie J. | $ 3,660.35 |
| 52 | NY | 14980 | Ma | Lou Xi | $ 8,602.28 |
| 53 | Non-NY | 24812 | Martin | Kristen A | $ 4,415.46 |
| 54 | Non-NY | 17548 | Martin | Lee | $ 1,205.93 |
| 55 | Non-NY | 25754 | Maynard | Mary Alesha | $ 537.40 |
| 56 | Non-NY | 24966 | Mcdonogh | Tara | $ 1,425.74 |
| 57 | NY | 14022 | McKenzie | Amora R. | $ 2,956.89 |
| 58 | NY | 21215 | Mcleggan | Ivy | $ 4,993.20 |
| 59 | Non-NY | 25355 | McLendon | Muslimah | $ 1,339.32 |
| 60 | Non-NY | 26909 | Moore | Destinee S | $ 2,659.96 |
| 61 | Non-NY | 21424 | Morales | Grecia | $ 811.56 |
| 62 | NY | 12947 | Nasisi | Cara | $ 10,007.15 |
| 63 | Non-NY | 21444 | Niehaus | Carol A. | $ 1,541.03 |
| 64 | NY | 25202 | O'Brien | Theresa A. | $ 1,883.25 |
| 65 | Non-NY | 13916 | Ocain Campbell | Barbara | $ 3,321.23 |
| 66 | Non-NY | 25783 | Onwuzuligbo | Ifeoma | $ 3,699.37 |
| 67 | NY | 21564 | Oosterhouse | Yu | $ 5,514.87 |
| 68 | Non-NY | 22830 | Osifo | Ehimwenma C. | $ 5,442.12 |
| 69 | NY | 24923 | Pappoe | Natasha | $ 7,096.28 |
| 70 | NY | 27779 | Provenzano | Ruth A | $ 2,620.54 |
| 71 | NY | 26497 | Reed | Jorraine | $ 4,023.13 |
| 72 | Non-NY | 23366 | Reynolds | Suzanne M. | $ 6,175.47 |
| 73 | Non-NY | 32431 | Roach | Tina | $ 195.33 |
| 74 | NY | 13804 | Rodriguez | Lisette | $ 7,730.30 |
| 75 | Non-NY | 23885 | Rosing | Colleen M | $ 1,555.69 |
| 76 | Non-NY | 23720 | Rubino | Jaclyn | $ 4,996.43 |
| 77 | Non-NY | 24881 | Russom | Eyvette | $ 1,167.26 |
| 78 | Non-NY | 25954 | Salas | Bertina | $ 400.49 |
| 79 | Non-NY | 25926 | Salkil | Tracy | $ 2,237.60 |
| 80 | NY | 13764 | Santos | Everlin | $ 8,778.14 |
| 81 | Non-NY | 26894 | Sherer | Nichole | $ 1,950.62 |
| 82 | NY | 20658 | Sliwinski | Diane | $ 4,388.58 |

**Nasisi v. Comprehensive Health Management, Inc.**
**Joint Stipulation of Settlement**
**Attachment 1 - FLSA Opt-In Plaintiffs**

|    | Opt-in Plaintiff | Empl ID | Last Name | First Name | Settlement Award |
|----|------------------|---------|-----------|------------|------------------|
| 83 | Non-NY | 22888 | Smith | Gregory J. | $ 754.26 |
| 84 | NY | 19085 | Smith-Dawson | Heatherlee | $ 5,001.66 |
| 85 | Non-NY | 22889 | Smollen | Eleanor | $ 2,197.43 |
| 86 | NY | 21210 | Taylor | Alyshiann | $ 5,232.75 |
| 87 | Non-NY | 12526 | Thuesdee | Andrea M. | $ 3,059.00 |
| 88 | NY | 16661 | Trinidad | Ivette A | $ 8,955.52 |
| 89 | Non-NY | 25530 | Waithe, RN | Jeanette | $ 580.05 |
| 90 | Non-NY | 19329 | Walker | Michele | $ 5,417.97 |
| 91 | Non-NY | 25913 | Wheeler-Mcfarland | Mary | $ 825.98 |
| 92 | NY | 27330 | Williams | Sharon N. | $ 3,996.55 |
| 93 | Non-NY | 25870 | Williamson | Maurice | $ 1,007.61 |
| 94 | Non-NY | 22096 | Willis | Erica | $ 642.39 |
| 95 | Non-NY | 26372 | Wills | Toni | $ 2,117.60 |

DocuSign Envelope ID: CF15217B-E14E-4241-83F9-93D54EF652C6

# ATTACHMENT 2

Insert Date

Re:     «OfficialCaseName»
        «CourtTitle»
        (Case No: «CourtAssignedCase»)

 «Barcode»    «BarcodeString»
              SIMID  «SIMID»
              «FirstName» «LastName»
              «Address1» «Address2»
              «City» «Abbrev»  «Zip»

Dear «FirstName»,

You are receiving this letter because on _____, 2020, Judge Katherine Polk Failla approved a settlement of the lawsuit you joined against Comprehensive Health Management Inc. ("WellCare"), a subsidiary of WellCare Health Plans, Inc. for overtime wages. Your settlement payment for joining the collective action lawsuit against Wellcare is enclosed. **You must cash the enclosed settlement check by [insert 180 days from mailing].** After [insert 180 days from mailing], the enclosed settlement check will be void.

In this Lawsuit, the Plaintiffs alleged that WellCare violated the New York Labor Law (NYLL) and Fair Labor Standards Act (FLSA) by classifying employees in certain Care Management Job Positions as exempt and denying them overtime payments for hours worked in excess of forty (40) in certain work weeks. The Lawsuit also alleges that WellCare failed to provide New York employees in Care Management Positions with wage notices and wage statements as required by the NYLL. WellCare denies these allegations and maintains it fully complied with the law at all times. For purposes of this Settlement, the term Care Management Job Position includes the following salaried exempt job positions: Care Manager, Care Manager, Sr., Field Care Manager (including Pediatric Field Care Managers), Field Care Manager, Sr., Behavioral Health Care Manager, Behavioral Health Care Manager, Sr., Clinical Social Worker, Clinical Social Worker, Sr., Onsite Inpatient Care Manager, Behavioral Health UM Care Manager, Behavioral Health UM Care Manager Sr., Field Service Coordinator, RN, Field Service Coordinator, Sr., and Utilization Review, RN.

Wellcare has agreed to pay $550,000 to settle the lawsuit (the "Gross Settlement Amount"). From the Gross Settlement Amount, Plaintiffs' Counsel was awarded $183,333.33 in attorneys' fees and $[insert] in litigation expenses, each Named Plaintiff was awarded $7,500 as a service award for their effort in initiating and participating in the litigation of the lawsuit, and Analytics Consulting LLC was awarded $8,501 for settlement administration expenses. The remainder of the Settlement Fund, equals the Net Settlement Fund payable to the FLSA Opt-In Plaintiffs.

The amount to be paid to each FLSA Opt-in Plaintiff for overtime wages is based on a formula set forth in the Joint Stipulation of Settlement.  The formula accounts for the number of weeks each of the 95 FLSA Opt-in Plaintiffs worked in a covered salaried Care Management Job Position during his or her Applicable Limitations Period and the FLSA Opt-in Plaintiff's regular rate of pay. The amount to be paid to each NY Opt-in Plaintiff for statutory penalties for allegedly not providing wage notices and wage statements that

DocuSign Envelope ID: CF15217B-E14E-4241-83F8-93D54EF652C6

were compliant with the NYLL is based on the NY Opt-in Plaintiffs' dates of employment and 50% of the maximum penalties provided for under the NYLL.

Your share of the Net Settlement Amount was calculated by taking the amount computed to be owed to you in overtime damages and, if you worked in New York, NY notice and statement penalties, and by dividing that amount by the total amount calculated to be owed to all FLSA Opt-in Plaintiffs in overtime damages and NY notice and statement penalties. The result is your pro rata share of the Net Settlement Amount. Your Settlement Payment was determined by multiplying the Net Settlement Amount by your pro rata share. The enclosed Settlement Payment is your pro rata share of the Net Settlement Amount.

The amount of your Settlement Payment that represents overtime damages was separated into two equal amounts: 50% was allocated to the claims asserted in the lawsuit for unpaid overtime wages, and 50% was allocated to the claims asserted in the lawsuit for liquidated damages. The portion allocated to claims asserted in this lawsuit for unpaid overtime wages is subject to all authorized or required payroll tax deductions, just as if it were a regular paycheck, and it will be reported on an I.R.S. Form W-2. The portion allocated to liquidated damages will be reported as non-wage income on an I.R.S. Form 1099 if required by the I.R.S rules. If you worked in New York, the amount of your Settlement Payment that represents NY notice and statement penalties will be reported as non-wage income on an I.R.S. Form 1099. Wellcare will pay the employer's share of applicable state and federal payroll taxes on the wage portion of your Settlement Payment. No one is providing you tax advice in connection with the settlement. It is your responsibility to consult with a tax advisor if you have questions about the tax implications of the settlement payment.

In exchange for cashing the enclosed settlement check, you will release Defendant and any of its employees, agents, related or affiliated companies and others defined in the settlement as the Released Parties from all state or federal claims or causes of action related to unpaid overtime wages allegedly owed as a result of working in a salaried Care Management Job Position for Defendant during your Applicable Limitations Period, including claims arising under the federal Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), including the New York Wage Theft Prevention Act ("WTPA"), the New Jersey State Wage and Hour Law, the Illinois Minimum Wage Act, KY Rev. Stat. Sec. 337.285 and any other applicable state and municipal law (including common law, statutes, ordinances, and regulations), and including any related claims for liquidated, exemplary, or punitive damages, or penalties; any claims related to any of the foregoing for equitable relief (including injunctive or declaratory relief); and any claims related to any of the foregoing for interest and attorneys' fees and costs. If you are a NY Opt-in Plaintiff, you will also release Defendant and the Released Parties for all wage statement and notice claims under the New York Labor Law ("NYLL"), including the New York Wage Theft Prevention Act ("WTPA").

If you do not cash your settlement check, you will not release any overtime claims arising under the FLSA or parallel state law claims.

Wellcare will not discriminate or retaliate against you in any way for cashing the check. Checks that are not cashed within 180 days of issuance shall be remitted by the Settlement Administrator to the cy pres recipient, the National Employment Law Project, a 501(c)(3) charitable organization.

Any questions regarding the tax implications of the Settlement Payments should be directed to your tax professional. Any questions about the Settlement should be directed to your attorneys at Werman Salas P.C. at the following telephone number (312) 419-1008 or email address WellcareOvertimeLawsuit@flsalaw.com.

Sincerely,